UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-40-FDW
(3:11-cr-404-FDW-DSC-1)

| | |
|---|---|
| ZONTA TAVARUS ELLISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1). Also pending before the Court is Petitioner's "Pro Se Motion to Dismiss Indictment in Response to United States Lack of Response to Pro Se Motion to Vacate." (Doc. No. 4).

I. BACKGROUND

**A. Petitioner sells crack cocaine to an undercover officer on three occasions.**

In June 2011, an undercover officer bought crack cocaine from Petitioner Zonta Tavarus Ellison on three separate occasions. (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 67 at 110: Trial Tr. I). Each of the transactions was recorded by audio or video. (Id. at 113; 128; 149). On June 15, 2011, Petitioner sold the undercover officer 3.5 grams of crack cocaine for $180 in the driveway of Petitioner's mother's house in Charlotte, North Carolina. (Id. at 111). During the transaction, Petitioner boasted that he had three "trap spots" or drug houses located throughout Charlotte. (Id. at 118).

Less than two weeks later, Petitioner spoke with the undercover officer via telephone to arrange a second drug transaction. (Id. at 124-27). During the conversation, Petitioner agreed to

1

sell the undercover officer seven grams of crack cocaine for $350. (Id. at 127). The second exchange took place in the parking lot of a Wendy's restaurant in Charlotte. (Id. at 132; 134). After the transaction, Petitioner discussed the possibility of future drug transactions, involving large quantities of crack cocaine. (Id. at 134). Petitioner also stated that he was "trying to get [his] hands on some dog food," which, according to the undercover officer, is a street term for heroin. (Id. at 134-36).

Days later, Petitioner met with the undercover officer for a third transaction. (Id. at 141). Before the meeting, Petitioner agreed to sell the undercover officer 14 grams of crack cocaine for $700. (Id. at 141-45). Once again, Petitioner met the officer at the Wendy's restaurant for the transaction. (Id. at 145). After Petitioner entered the undercover officer's car and passed him the crack cocaine, the officer weighed the drugs using a digital scale. (Id. at 150-51). When the undercover officer told Petitioner that the drugs were light, meaning they weighed less than the agreed-upon amount, Petitioner returned to his car to retrieve additional crack cocaine, which he then gave to the undercover officer. (Id. at 151-52). After confirming the weight, the officer paid Petitioner $700. (Id. at 152; 154).

Petitioner was subsequently arrested and charged on December 13, 2011, with three counts of possession with intent to distribute cocaine base in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C). (Id., Doc. No. 1: Indictment). Attorney Emily Marroquin was appointed to represent Petitioner, but Petitioner later hired attorney Marcos Roberts to represent him. (Id., Doc. No. 8: Entry Jan. 17, 2012). On February 2, 2012, the Government filed an information pursuant to 21 U.S.C. § 851, seeking enhanced penalties based on Petitioner's prior 2010 North Carolina state conviction for selling cocaine. (Id., Doc. No. 7: Notice of Prior Conviction).

2

**B. Petitioner complains of not receiving discovery, but refuses to review the discovery provided by his attorney.**

At an inquiry of status hearing in August 2012, Petitioner expressed frustration with his attorney regarding disclosure of discovery. (Id., Doc. No. 63 at 8-11: Status of Counsel Hrg. Tr.). The Court explained the Government's open file discovery policy, which prohibits defendants from retaining copies of documents while incarcerated. (Id. at 8-10). Petitioner's attorney Roberts stated that he had discussed the discovery with Petitioner and had brought the entire file to the jail, but that Petitioner was interested in information that was not relevant to the substance of the charges. (Id. at 11-14; 18). The hearing was continued to allow Petitioner and Roberts to speak privately. (Id. at 21).

At the continuation of the hearing, Roberts told the Court that he sent a paralegal with the entire discovery binder to visit Petitioner and to allow him to look through the discovery page-by-page. (Id., Doc. No. 64 at 5-6: Status of Counsel Hrg. Tr.). Petitioner did not believe that it was all of the discovery and refused to look at it. (Id. at 6). Roberts then went to the jail to meet with Petitioner personally and to show him the discovery. (Id.). Petitioner again refused to look at it, claiming that it was not all of the discovery. (Id.). Petitioner stated that he did not want Roberts to continue to represent him, and the Court allowed Roberts to withdraw. (Id. at 7-8).

Attorney Steven T. Meier was then appointed to represent Petitioner. (Id., Doc. No. 18). At the end of November 2012, the Court held another inquiry of counsel hearing based on Petitioner's desire for Meier to file motions that Meier believed were frivolous. (Id., Doc. No. 20: Motion for Inquiry of Counsel; Doc. No. 65: Status of Counsel Hrg. Tr.). The Court ordered Meier to continue as counsel. (Id., Doc. No. 65 at 8).

### C. Petitioner chooses to proceed pro se at trial.

On the first day of trial, Petitioner stated that he wanted to proceed pro se, with Meier serving as standby counsel. (Id., Doc. No. 67 at 5: Trial Tr. I). The Court explained Petitioner's right to self-representation, as well as the requirement that he invoke that right clearly and unequivocally, knowingly and intelligently, and in a timely manner. (Id. at 7-13). Petitioner stated that he was ready to represent himself and that he was ready for trial. (Id. at 13-14). Petitioner again complained about discovery, and the Court explained to Petitioner that he was not allowed to have hard copies of discovery while in jail. (Id. at 14-18; 21-29). The Government outlined the evidence that it intended to present, and Petitioner reiterated that he was "positively, absolutely certain" that he wanted to represent himself. (Id. at 23-25; 29). The Court granted the motion, finding that Petitioner's assertion of his right to represent himself was clear and unequivocal and that it was made knowingly, intelligently, and voluntarily. (Id. at 29). The Court also found that the motion was timely in that it was made before jury selection. (Id. at 30). Petitioner again was given access to the discovery. (Id. at 35).

At trial, the undercover officer, Charlie Davis, testified that he purchased crack cocaine from Petitioner on three separate occasions during June 2011. (Id. at 110-12; 132; 151-52). The audio or video evidence showing these transactions was also admitted. (Id. at 113; 128; 149). Petitioner took the stand and admitted to selling crack cocaine to the undercover officer on the three dates charged in the indictment. (Id., Doc. No. 68 at 136-37: Trial Tr. II). He also admitted that he had three prior convictions for possession of cocaine, as well as one conviction for selling cocaine, one conviction for possession with intent to distribute marijuana, and one conviction for possession of Ecstasy. (Id. at 135-36).

4

Petitioner tried to elicit the identity of the confidential informant (CI) who had purchased marijuana from him in March 2011, months before the cocaine offenses with which he was charged, but the Court instructed him that this was not to become public information. (Id., Doc. No. 67 at 157-58: Trial Tr. I). Petitioner then insisted, over the Government's objection, on introducing evidence of the CI's purchase of marijuana from him. (Id. at 162-76; 179). He later argued that because the Government used a CI to effect an undercover purchase of marijuana, he should be allowed to cross-examine the CI. (Id., Doc. No. 68 at 11-12: Trial Tr. II). The Court reminded Petitioner that he had introduced the document that indicated that he had purchased marijuana from a CI and that this did not create a right for him to cross-examine the CI because the Government had not called the CI as a witness and that transaction had nothing to do with the three cocaine charges at issue in the trial. (Id. at 12-14). The Court did not order disclosure of the name of the CI because Petitioner had not shown an actual need for this information. (Id. at 22-23). The Court also noted that the exhibit evidencing this prior transaction showed that Petitioner was not an otherwise innocent party because he had the predisposition to be a drug trafficker. (Id. at 14-15).

Petitioner tried to argue that he was entrapped into committing the cocaine offenses. When pressed as to what evidence he had of entrapment, he stated that he wanted to subpoena the CI to determine where the CI had received his information from. (Id. at 17-18). He then indicated that he knew the identity of the officer whom he believed had contacted the CI or started the investigation, and the Court agreed that he could subpoena the officer to determine whether he had done anything improper in commencing the investigation. (Id. at 18; 20-21). The Government stated that Petitioner had previously filed a complaint against this officer, Jonathan Frisk. (Id. at 18).

5

Petitioner attempted to offer as a defense that Frisk had a vendetta against him. (Id. at 89). Petitioner called Frisk to testify and introduced evidence of a 2007 incident in which Frisk attempted to speak with Petitioner regarding a probation violation warrant, but Petitioner fled before he eventually was arrested. (Id. at 74-75; 77). A different officer found crack cocaine in the patrol car where Petitioner had been sitting, after observing Petitioner stuff something under the seat. (Id. at 75; 77). As a result of this incident, Petitioner pleaded guilty to possessing cocaine. (Id. at 82). The Court held that Petitioner was not entitled to a jury instruction on entrapment because he had presented no evidence that the Government had induced the offenses. The Court also found that the Government had presented evidence of Petitioner's own predisposition to commit the offenses. (Id. at 181-83). The jury convicted Petitioner of all counts. (Id. at 225-26).

The probation officer issued a PSR, recommending that Petitioner be sentenced as a career offender in light of his prior convictions for robbery with a dangerous weapon and selling cocaine. (Id., Doc. No. 44 at ¶ 20: PSR). This resulted in a total offense of 34, a criminal history category of VI, and an advisory guidelines range of 262-327 months of imprisonment. (Id. at ¶¶ 22; 38; 71). Petitioner objected to the use of his 2010 North Carolina conviction for selling cocaine, arguing that it should not be used against him because it was the result of an Alford plea and, thus, he had not admitted to committing this offense. (Id., Doc. No. 59 at 14-28: Sent. Tr.). This Court overruled his objection and imposed a sentence of 262 months of imprisonment, specifically finding that it would impose the same sentence as an upward variance even if the career offender enhancement did not apply. (Id. at 27-28; 48-50).

### D. The Fourth Circuit affirms Petitioner's conviction and sentence.

Petitioner appealed, arguing that he had not knowingly waived his right to counsel and that he should have received a two-level reduction for acceptance of responsibility even though he proceeded to trial. United States v. Ellison, 588 F. App'x 266, 266 (4th Cir. 2014), cert. denied, 135 S. Ct. 2873 (2015). The Fourth Circuit affirmed, holding that Petitioner had unequivocally asserted his right to self-representation and that his election to proceed pro se was made knowingly, intelligently, and voluntarily.[1] Id. at 267.

On February 14, 2013, Petitioner filed a 28 U.S.C. § 2254 application in this Court, attempting to challenge the state court conviction charged in the § 851 notice before it was used to enhance his sentence in this case. Ellison v. United States, No. 3:13cv94, 2013 WL 1190296 (W.D.N.C. Mar. 22, 2013) (unpublished). This Court dismissed the application without prejudice. Id. Petitioner timely filed the present motion to vacate on January 21, 2016. Petitioner raises five claims in his motion: (1) prosecutorial misconduct; (2) denial of his ability to present an entrapment defense; (3) ineffective assistance of counsel; (4) use of an invalid prior conviction to enhance his sentence; and (5) violation of double jeopardy. (Doc. No. 1 at 4-6). The Government filed a response on April 21, 2016. On April 26, 2016, Petitioner filed a "Pro Se Motion to Dismiss Indictment in Response to United States Lack of Response to Pro Se Motion to Vacate," in which Petitioner contends incorrectly that the Government did not file a response, and he therefore argues for dismissal of the original indictment against him.

---

[1] Although Petitioner attempted to file a pro se brief raising additional issues, the Fourth Circuit issued its decision before he did so. See (No. 14-4197, Doc. No. 78 (4th Cir.)).

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**A. Petitioner's entrapment, prior conviction, and double jeopardy claims.**

First, as to Petitioner's entrapment, prior conviction, and double jeopardy claims, the Government argues that Petitioner did not raise these claims on direct appeal, and they are therefore procedurally defaulted.[2] The Court agrees. A § 2255 motion is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). Claims of error that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show actual prejudice, a petitioner must demonstrate that errors in the proceedings

---

[2] Petitioner also did not raise his claim for prosecutorial misconduct on direct appeal, but the Government did not raise procedural default as a defense to this fourth claim. Rather, the Government contends in its response only that the prosecutorial misconduct claim fails on the merits, and the Court agrees for the reasons stated herein.

"worked to his actual and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170. To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014), cert. denied, 135 U.S. 1467 (2015). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Petitioner argues that he was unable to present an entrapment defense, that the prior North Carolina conviction used to enhance his sentence was invalid, and that the Government violated the Double Jeopardy Clause by charging him for conduct that the state had dismissed. (Doc. No. 1 at 4-6). Petitioner did not raise these issues on direct appeal. See Ellison, 588 F. App'x at 266. Because Petitioner has not alleged cause or prejudice for this failure, these claims are procedurally barred.

Although Petitioner does not specifically argue actual innocence to overcome the procedural bar, even if his assertion that he was entrapped to commit the three cocaine transactions could be read to raise this issue, it does not show that he was factually innocent of the crime. He conceded at trial that he sold crack cocaine to the undercover officer on three occasions. (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 68 at 136-37: Trial Tr. II). Additionally, as this Court determined, Petitioner failed to show that the Government had induced the offenses; rather, the Court found that the Government had shown that he had a predisposition to commit them. (Id. at 181-83). Accordingly, any attempt to show factual innocence would be futile.

Because Petitioner has not shown cause, prejudice, or actual innocence, he cannot overcome the procedural bar for his failure to raise these claims on direct appeal. Therefore,

these claims are dismissed. See Bousley, 523 U.S. at 621-22. Furthermore, for the following reasons, even if these claims could be considered, they are without merit.

**1. Petitioner's contention that he was entitled to an entrapment instruction.**

Entrapment is an affirmative defense that a defendant may invoke when he can show that the government induced the crime and that he did not have a predisposition to engage in criminal conduct. Mathews v. United States, 485 U.S. 58, 62-63 (1988). To show inducement, a defendant must show "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993). The government's behavior must be "so inducive to a reasonably firm person as likely to displace mens rea." United States v. DeVore, 423 F.2d 1069, 1072 (4th Cir. 1970). Inducement requires more than mere solicitation by the government. United States v. Hsu, 364 F.3d 192, 198 (4th Cir. 2004). Thus, "the fact that the government initiated the drug transaction and solicited [a defendant] to broker the drug deal" is insufficient to show inducement. United States v. Wright, 333 F. App'x 772, 776 (4th Cir. 2009).

Petitioner argues that he was prevented from presenting an entrapment defense because he was not allowed to subpoena a witness critical to this defense. (Doc. No. 1 at 4). Although he does not specifically identify the witness, this appears to be a reference to the CI from the March 2011 drug sale. (Id.). This allegation is dismissed as conclusory. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014). The testimony of the CI from the March 2011 marijuana transaction was not relevant to the three cocaine charges Petitioner faced, where these three transactions occurred months later and were conducted by a different person. Additionally, Petitioner has not alleged or shown government inducement or

10

lack of predisposition on his part. Rather, as this Court found, the evidence presented at trial showed that he had the predisposition to commit the charged offenses. See (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 68 at 14-15; 181-83: Trial Tr. II). Accordingly, his assertion that he was prevented from presenting an entrapment defense lacks merit.

**2. Petitioner's challenge to his prior state conviction.**

Unless a prior state conviction has been set aside, a defendant is generally barred from challenging on post-conviction review the validity of a prior state conviction used to enhance his federal sentence. See Daniels v. United States, 532 U.S. 374, 376 (2001). Although there is an exception for prior convictions obtained in violation of the right to counsel, this defect must have been raised during the federal sentencing hearing. Id. at 382. Petitioner argues that the prior North Carolina conviction for selling cocaine that was used to enhance his sentence was invalid since he was forced to sign an Alford plea to be released for time served. (Doc. No. 1 at 4; 6). However, he has presented no evidence to show that this prior conviction has been invalidated. Accordingly, "[t]he presumption of validity that attached to the prior conviction at the time of sentencing is conclusive." See Daniels, 532 U.S. at 382. Moreover, the Fourth Circuit has recognized the validity of using prior convictions obtained pursuant to Alford pleas in sentencing a defendant. See United States v. King, 673 F.3d 274, 282-83 (4th Cir. 2012) (holding Alford plea qualified as a prior conviction under the Guidelines); United States v. Guzman-Alvarado, 457 F. App'x 296, 298 (4th Cir. 2011) (affirming Armed Career Criminal Act enhancement based on prior Alford plea). Finally, this Court stated at sentencing that it would impose the same sentence even if the guidelines range had not been increased based on this prior conviction. (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 59 at 48-50: Sent. Tr.). Therefore, Petitioner's challenge to his prior state conviction is without merit.

**3. Petitioner's double jeopardy claim.**

A defendant commits two distinct offenses when he commits a single act that violates the laws of two different sovereigns. See Heath v. Alabama, 474 U.S. 82 (1985). The Double Jeopardy Clause "does not bar successive prosecutions by different sovereigns." Lynn v. West, 134 F.3d 582, 593 (4th Cir. 1998); see United States v. Neal, No. 3:09cr17, 2010 WL 339018, at *2 (W.D.N.C. Jan. 22, 2010) (unpublished) (holding that "the dismissal of state charges has no impact on the ability of the federal government to prosecute based on the same conduct").

Petitioner argues that his double jeopardy rights were violated when the Government charged him for the same conduct for which the state of North Carolina had charged him. (Doc. No. 1 at 6). He concedes that the state charges were dismissed before the federal charges were brought. (Id.). Because the prior charges were brought by the state of North Carolina, prosecution of Petitioner under federal law is not a double jeopardy violation. See Lynn, 134 F.3d at 593. Accordingly, this claim is without merit.

**B. Petitioner's claim of prosecutorial misconduct**.

In support of his claim for prosecutorial misconduct, Petitioner argues that the Government used a paid informant to purchase marijuana from him and to persuade him to sell crack cocaine. (Doc. No. 1 at 4). He contends that when he attempted to subpoena the informant to establish a defense of entrapment, the Government withheld "this evidence." (Id. at 6). He asserts that his motions to compel production of this witness were denied. (Id. at 4; 6).

To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Under Brady v. Maryland, 373 U.S. 83 (1963), the Government is required

to disclose favorable evidence that is material to guilt or punishment. Petitioner has not shown that the Government engaged in prosecutorial misconduct. Here, the evidence that Petitioner sought was not material to his guilt or punishment on the cocaine charges. As this Court determined when Petitioner requested this information, it was not necessary for the Government to identify the CI involved in the March 2011 drug transaction because this incident was not related to the charges pending against Petitioner. (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 67 at 157-58: Trial Tr. I; Doc. No. 68 at 22-23: Trial Tr. II). Because the CI was not relevant, there was no need to subpoena the CI as a witness. Furthermore, Petitioner cannot show any prejudice because the March and June incidents were unrelated, and, rather than showing improper enticement of Petitioner, the prior incident confirmed Petitioner's predisposition to sell drugs. See (Id., Doc. No. 68 at 14-15; 181-83: Trial Tr. II). In sum, Petitioner's claim of prosecutorial misconduct is denied because he cannot show that the Government improperly withheld the identity of a CI from an unrelated drug transaction, or that the failure to disclose this information deprived him of a fair trial.

    **C. Petitioner's claim of ineffective assistance of counsel.**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant

relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

In support of his claim for ineffective assistance of counsel, Petitioner asserts that his attorney withheld discovery until the first day of trial and then abandoned him. (Doc. No. 1 at 4). He contends that he was forced into trial unprepared and that the Court did not conduct a Ferreta hearing. (Id. at 6). He also contends that his appellate attorney provided ineffective assistance by refusing to provide "discovery" to him that would have proven that the transcripts of the proceedings were fabricated. (Id.). The Fourth Circuit held on appeal that Petitioner knowingly and voluntarily decided to proceed pro se at trial. Ellison, 588 F. App'x at 267. Petitioner may not challenge this determination on collateral review. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (claims considered on direct review may not be recast "under the guise of collateral attack"). Therefore, Petitioner's assertion that his attorney abandoned him is without merit as Petitioner made his own decision to proceed pro se.

Petitioner has also not shown that his attorney withheld discovery from him. The record from the inquiry of status hearings shows that both a paralegal and Petitioner's attorney attempted to show him the entire discovery file while he was incarcerated, but Petitioner refused to view it. (Crim. Case No. 3:11-cr-404-FDW-DSC-1, Doc. No. 63 at 11-14, 18; Doc. No. 64 at 5-6). Petitioner's attorney also discussed the discovery with him. (Id., Doc. No. 63 at 11-14;

14

18). Petitioner cannot show deficient performance by counsel where Petitioner refused to view the discovery that was provided to him. Nor can he show prejudice, because he does not allege that there is a reasonable probability that he would not have been convicted had he been provided with discovery earlier before trial. See Strickland, 466 U.S. at 694.

Finally, Petitioner's assertion that his appellate attorney failed to provide "discovery" to him that would have proven that the transcripts of the proceedings were fabricated, will be dismissed as speculative and conclusory, see Dyess, 730 F.3d at 359-60, and because Petitioner has failed to show prejudice. Petitioner does not allege what evidence existed that might have shown that the transcripts were fabricated, how such evidence would have presented a stronger issue to raise on appeal, or that there is a reasonable probability that he would have prevailed on appeal had counsel shown him such "discovery." See Smith v. Robbins, 528 U.S. 259, 285-86, 288 (2000) (holding that a petitioner alleging ineffective assistance of appellate counsel still bears the burden to show prejudice).

In sum, because Petitioner cannot show deficient performance or prejudice by trial or appellate counsel, his ineffective assistance claims are denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.   Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**. To this extent, Petitioner's "Pro Se Motion to Dismiss Indictment in Response to United States Lack of Response to Pro Se Motion to Vacate," (Doc. No. 4), in which Petitioner contends incorrectly that the Government did not file a response, is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

*[signature]*

Frank D. Whitney
Chief United States District Judge